JOHNSON *against* SMITH.

Upon a contract for the sale of sugars, the delivery of the export entry is not a delivery of the articles sold, within the meaning of the statute. Neither is the delivery of samples, forming no part of the bulk sold.

Where there is an agreement on a sale, that the vendee shall give notes, with an indorser, at four and five months, upon a demand of such notes, and a total disaffirmance of the contract by the vendee, general *indebitatus assumpsit lies.*

ASSUMPSIT, for goods sold and delivered.

Plea, non-assumpsit.

This action was brought for 59 hogsheads of sugar, alleged to have been sold by the plaintiff to the defendant.

It appeared, that on the 23d June, 1806, a conversation took place between the plaintiff and defendant, concerning the sale of those sugars, in which conversation it was ultimately agreed, that the plaintiff would sell them to the defendant, at 11 dollars and 50 cents per hundred weight, and the defendant was to give, in payment, his own notes, at 4 and 5 months, with his uncle's indorsement; that the export entry was then delivered to him, which merely specified the numbers and marks of the hogsheads, and the defendant took the samples which had been exhibited, (which were no part of the weight,) rolled them in a paper and laid them aside in the plaintiff's counting-room, and promised to call and take them away the next day, which he did not do, and inquired whether the sugars might remain in the plaintiff's store a few days, which was assented to by the plaintiff. On the night of the 27th June, the store and sugars were consumed by fire.

Johnson v. Smith.

A few days afterwards, a letter was written by the plaintiff to the defendant, on the subject of the sale, to which the defendant replied, disavowing the contract.

The defendant's counsel moved for a non-suit, on the ground that the plaintiff ought to have declared on the special contract to give notes, with an indorser, at 4 and 5 months, and could not declare generally for goods sold and delivered, as he had done here.

It was answered, by the plaintiff, that whenever such an agreement was made, and the vendee refused to give the notes when demanded, he disaffirmed the contract as to the notes, and entitled the plaintiff to declare generally, that the letters which passed between the plaintiff and defendant, subsequent to the loss of the sugars, were sufficient evidence of such demand and refusal. The judge being of this opinion, the non-suit was refused; but the point was reserved at the defendant's request.(1)

(1) The true rule, on this subject, is correctly stated by Sir James Mansfield, C. J., in the case of *Brook* et al. v. *White*, 1 Bos. & Pul. N. S. 330: "When a person sells goods upon a certain credit, to be paid for by a bill at a certain date, he can maintain no action for 'goods sold,' until the expiration of the period at which such bill would become due, because the goods are not agreed to be paid for until that time. If the bill be not given, he may bring an action on the special contract, because he is deprived of the particular security agreed on; but when the whole time is expired, and no bill has been given, he may bring an action for the money which is then due." In other words, before the expiration of the time of credit, the plaintiff must declare specially, for a breach of the contract to give a bill but after the expiration of that time, a general count in "*indebitatus assumpsit*," for goods sold, is sufficient.

The reason given by Heath, J., in the same case, appears to be the true reason. "When the contract is executory, the party must declare specially; but when it is executed, he may declare generally." In support of this

As the facts in the cause had been proved by a single witness, the defendant, in order to impeach the accuracy of his recollection, offered to go into testimony, to show that, from the situation of the defendant with reference to his

opinion, he refers to the case of *Alcorn* v. *Westbrook*, (1 Wilson, 115,) where Dennison, J., says, if a man agrees to build another a house, to be paid for it, and afterwards builds the house, in this case he has two ways of declaring, either upon the original executory agreement, to be performed *in futuro*, or upon an *indebitatus assumpsit* or *quantum meruit*, when the house is actually built and the agreement executed. In Lawes on Pleading, in assumpsit, (p. 6,) the cases on this subject are collected together, and commented on, and the rule, as above stated, admitted to be correct. From this view of the subject, it would seem that the plaintiff, in the case in the text, ought to have been non-suited, his action having been brought before the time of credit had expired, and the declaration being *indebitatus assumpsit* generally. How far the recovery will be the same, on the general, as on the special count, with reference to the interest. Vide, *Marshall* et al. v. *Pool* et al., 13 East. 97; *De Bernallas* v. *Fuller* et al., 2 Camp. 426, and the cases cited in the notes to those cases.

In the case of *Hannon* v. *Mills*, (21 Wend. 90,) the court held, that when goods are sold, to be paid for by a note or bill, payable at a future day, and the note or bill is not given, the vendor cannot maintain assumpsit, on the general count, for goods sold and delivered, until the credit has expired, but he can sue immediately for a breach of the special agreement. In such an action he will be entitled to recover, as damages, the whole value of the goods, unless, perhaps, there should be a *rebate* of the interest during the stipulated credit. The right of action is as perfect on a neglect or refusal to give the note or bill as it can be after the credit has expired. The only difference between the suing, at the one time or the other, relates to the form of the remedy; in the one case, the plaintiff must declare specially; in the other, he may declare generally. The remedy, itself, is the same in both cases. The damages are the price of the goods.

The same doctrine is affirmed in *Yale* and *Henshaw* v. *Coddington*, 21 Wend. 175.

It is very obvious that it can make no difference in the application of the rule, whether the defendant admits the existence of the contract and refuses or neglects to perform it, or denies entirely the existence of any obligatory engagement. The contract must be established in both cases before there can be a recovery.

uncle, it was improbable that he could have offered him as an indorser; but this was overruled by the court, as being too remote an inference.

The defendant then rested his defence chiefly on two grounds:

1. That even the parol contract between the parties had not been perfected,—the sale being by weight, and that weight not having been ascertained.   6 East, 614, 625.

2. That even if the parol contract had been complete, there was nothing to take it out of the statute of frauds; that there was no sufficient evidence of delivery; that to constitute a symbolical delivery, something must be delivered and accepted, with the express intention of constituting a delivery, and saving the statute of frauds; that the delivery of a sample is not a delivery of part of the goods, within the meaning of the statute, unless the sample is considered as part of the bulk.   7 T. R. 14.

The plaintiff's counsel contended, that the delivery of the export entry to the defendant, was a sufficient delivery to satisfy the statute, inasmuch as it contained the marks and numbers of the hogsheads, and was, therefore, a designation of the goods by the vendor, to the use of the vendee, and was even equivalent to the marking them by the vendee, both of which acts constituted a sufficient delivery.   1 Johns. Rep. 17.   They also contended, that the defendant's laying aside the samples, was equivalent to a delivery, because he thereby withdrew the articles from the market. To show what constituted a symbolical delivery, they cited 1 Comyn on Contracts, 96, 102; 3 Johns. Rep. 421; 2 Caines, 44.

THOMPSON, J., said he was of opinion that the facts rela-

tive to storage and the delivery of the export entry, were put out of the question, in this case, by the decision of the court in the case of *Bailey* and *Bogert* v. *Ogden* and *Ogden*, (3 Johns. Rep. 421,) that the only question was, whether the defendant's acts, relative to the samples, would constitute a delivery in law. It must appear, in all cases of symbolical delivery, that it was the express intention of the parties to make a delivery ; that here, as the samples formed no part of the bulk to be paid for, the delivery and acceptance of them would not be a delivery and acceptance of part of the goods sold, within the meaning of the statute. The courts have gone far enough with regard to symbolical delivery, and that class of cases ought not to be extended.(2)

*Hoffman* and *Radcliff*, for the plaintiff.

*Emmet*, for the defendant.

### Verdict for the defendant.

(2) The plaintiff seems to have acquiesced in this verdict. It does not appear to have been moved before the supreme court. According to the English decisions, both grounds relied upon by the defendant are decidedly with him. Weighing was necessary in this case, from the terms of the contract, to ascertain the amount to be paid; and the true general rule is, that if any thing remains to be done on the part of the seller, as between him and the buyer, before the article purchased is to be delivered, a complete present right of property has not attached in the buyer. *Hanson* et al. v. *Myers*, 6 East. 626. The delivery of a sample is a fair delivery, within the statute, whenever the sample delivered is part of the bulk, and the bulk thereby diminished. *Klinitz* v. *Surrey*, 5 Esp. Cases, 267. The reasoning of the plaintiff's counsel is certainly plausible, that the defendant, by laying aside the samples, withdrew the article from the market, which was, therefore, equivalent to a delivery. Symbolical delivery of goods, has, in various cases, been considered a sufficient delivery to satisfy the statute; but to consider the act of

Johnson v. Smith.

the defendant, in this case, as a delivery, would certainly be carrying the doctrine of symbolical delivery further than any of the cases would warrant. Symbolical deliveries, which have been deemed sufficient to take a case out of the statute, have generally worn this distinguishing feature, that the vendee has thereby obtained a full control over the article sold. Such are the delivery of the key of the ware-house where the goods are stored. *Wilkes* v. *Ferris,* 5 Johns. 335. The delivery of the store-keeper's receipt for the goods stored, (ib.) a specific designation of the goods as the property of the vendee, by marking them, &c., (vide, 3 Johns, 407, and Robert on Frauds, 174,) a collection of the decisions relative to symbolical delivery. Upon this subject, there is great danger that an extension of the doctrine of symbolical delivery, might amount to a judicial repeal of one of the most important provisions of the statute of frauds, which declares that no sale of goods, &c., for the price of ten pounds and upwards, shall be good, except the buyer shall accept part of the goods so sold, and actually receive the same. Of this danger, the courts have lately been fully aware, and the present opinion upon this subject, is strongly expressed by Kent, C. J., in delivering the opinion of the court, in the case of *Bailey* and *Bogert* v. *Ogden,* 3 Johns. 421. "We do not wish to shake any of the cases, in which the actual delivery required by the statute, has been dispensed with; but those cases have gone far enough; our leaning should be towards the plain meaning of the statute."